UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00105-RSE

**JESSIE N.**                                                                                                          **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY,**[1]
*Commissioner of Social Security*                                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

The Commissioner of Social Security denied Jessie N.'s[2] ("Claimant's") application for disability insurance and supplemental security income benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 15). The Commissioner has responded in a Fact and Law Summary. (DN 17). Claimant has filed a reply brief. (DN 22). The parties have consented, under 28 U.S.C. § 63(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 18).

I. Background

Claimant applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI on April 28, 2021. (Transcript, hereinafter "Tr.," 164, 169). In her applications, Claimant alleged disability beginning on March 1, 2021, due to type II diabetes,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.
[2] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. 405(g) case will be identified and referenced by first name and last initial in opinions issued.

insulin dependence, degenerative disc disease, a Tarlov cyst on her spine, pinched nerves, mobility issues, numbness, anxiety, and depression. (Tr. 186). Her applications were denied on initial review and again on reconsideration. (Tr. 56, 62, 70, 76). Administrative Law Judge Dwight D. Wilkerson ("ALJ Wilkerson") conducted a hearing in Louisville, Kentucky on March 8, 2022. (Tr. 31-53). Claimant attended the hearing by telephone with her non-attorney representative.[3] (Tr. 33). An impartial vocational expert also attended the hearing. (Tr. 31).

During the hearing, Claimant testified to the following. Claimant currently lives with her father who helps care for her. (Tr. 44). She last worked in housekeeping and maintenance but quit in March 2021 due to back pain. (Tr. 37). Claimant reported struggling with anxiety which makes it difficult for her to go out in public. (Tr. 42). After medication prescribed by a physician failed to ease her social anxiety, she sought treatment with a therapist. (*Id.*). Claimant also stated that she cannot drive due to a cyst in her wrist that has left her left hand numb and unusable. (Tr. 42-43). Claimant does not leave the house except to attend appointments and typically reads or watches television throughout the day. (Tr. 45-46). Moreover, Claimant only sleeps for a couple hours at night due to her mental state and back pain. (Tr. 45).

Claimant testified that the greatest problem preventing her from working is her back pain. (Tr. 40). Despite having undergone an L4-L5 lumbar decompression surgery in May 2021, Claimant reported that the nerve pain in her back and left leg now feels similar to the pain she experienced before surgery. (Tr. 43). To help this pain, she performs back exercises at home but is not in physical therapy nor receives any injections. (Tr. 41). Although her physician prescribed her muscle relaxers, she contended that they were ineffective and caused her to suffer from side effects like sleepiness, dizziness, nausea, and loss of appetite. (Tr. 41, 43). Claimant stated that she

---

[3] Claimant agreed to appear at the administrative hearing by phone because of the COVID-19 pandemic. (Tr. 126).

has always used a cane while walking, even after the surgery. (Tr. 40). Without a cane, she can walk down a grocery store aisle or to the mailbox before needing to stop. (*Id.*). With a cane, she estimated that she could walk for approximately ten minutes, stand for fifteen minutes, and sit for twenty minutes. (Tr. 40-41). Although she cannot do some chores, such as cleaning the bathtub or sweeping, she can use a microwave, prepare simple foods, wipe down counters, and dust. (Tr. 45). Claimant reported that she cannot pick up anything heavier than a gallon of milk without exacerbating her back pain. (Tr. 44). Because she was experiencing nerve pain in her left leg and dragging her foot again, Claimant informed ALJ Wilkerson that she had an MRI scheduled for the day after the hearing. (Tr. 35, 40).

ALJ Wilkerson issued an unfavorable decision on April 20, 2022. (Tr. 13-26). He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since March 1, 2021, the alleged onset date. (Tr. 19). Second, Claimant has the following severe impairments: lumbar degenerative disc disease and diabetes. (*Id.*). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 20). Between the third and fourth steps, ALJ Wilkerson found Claimant has the residual functional capacity ("RFC") to perform "light work" with the following non-exertional limitations:

> [C]an stand and/or walk four hours in an eight hour workday, for up to thirty minutes at a time. She can do no climbing of ladders, ropes, or scaffolding, but occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling. She should avoid concentrated exposure to vibration, and do no work at unprotected heights or around dangerous moving machinery.

(Tr. 21). Fourth, Claimant is unable to perform any past relevant work. (Tr. 24). Fifth and finally, after considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy she can perform. (Tr. 25). Based on this evaluation, ALJ Wilkerson concluded Claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2021, through the date of his decision. (Tr. 26).

Claimant appealed ALJ Wilkerson's decision. (Tr. 158-60). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Wilkerson's decision. (Tr. 1). At that point, ALJ Wilkerson's denial become the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the ALJ's decision is limited to an inquiry as to whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th

4

Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant challenges ALJ Wilkerson's RFC determination with two claims of error. First, Claimant asserts ALJ Wilkerson failed by declining to obtain a medical source statement of Claimant's limitations from treating sources or order a consultative examination for an opinion of these limitations.[4] Second, Claimant states that ALJ Wilkerson erred by failing to comply with 20 C.F.R. §§ 404.1529 and 416.929 in his analysis of Claimant's subjective allegations and the RFC is not supported by substantial evidence.

### A. ALJ Wilkerson's Failure to Obtain a Medical Opinion or Order a Consultative Examination

State agency medical consultants opined that Claimant could perform a limited range of work at the light exertional level with occasional climbing of ladders, ropes, and scaffolding, frequent climbing of ramps and stairs, frequent stooping, kneeling, crouching, and crawling. (Tr. 59-60, 65-66, 73-74, 79-80). The consultants also opined that Claimant could stand and/or walk (with normal breaks) for approximately six hours in an eight-hour workday. (Tr. 58, 64, 73, 79).

---

[4] Claimant's use of the word "declined" suggests that Claimant asked ALJ Wilkerson to obtain a medical opinion. But Claimant never did so. Thus, a more accurate representation of Claimant's argument is, despite Claimant's silence on the issue, ALJ Wilkerson should have reached out to Claimant's treating source for an opinion or ordered a consultative examination.

5

At the hearing level, Claimant submitted a post-surgery, lumbar spine CT scan that was conducted on March 9, 2022. (Tr. 848-49). In his decision, ALJ Wilkerson considered the CT scan, finding that it "would support potential worsening of the claimant's condition." (Tr. 24). As such, ALJ Wilkerson afforded Claimant "significant benefit of the doubt in concluding the claimant has a more restrictive residual functional capacity than the conclusions reached by state agency consultants." (*Id.*).

Claimant argues that ALJ Wilkerson "improperly created an arbitrary RFC in light of his recognition of objective evidence that [Claimant's] condition had worsened, without any medical input to inform the decision." (DN 22, at PageID # 930-31). By interpreting this "raw medical evidence" without an opinion as to Claimant's physical capabilities, Claimant contends that ALJ Wilkerson violated his duty to develop the record. (DN 15-1, at PageID # 899, 902). Because the state agency consultants did not consider the CT scan, Claimant asserts that ALJ Wilkerson's reliance on these "stale assessment[s]" was in error. (*Id.* at PageID # 902).

In response, the Commissioner states that Claimant's argument is based on "the mistaken premise that the ALJ needs to rely on a specific medical opinion to support the residual functional capacity (RFC) finding." (DN 17, at PageID # 911). The Commissioner highlights that, because ALJ Wilkerson issued his decision only seven months after the state agency consultants issued their opinions, their findings are not outdated. (*Id.* at PageID # 918). In addition, the Commissioner points out that Claimant's CT scan does not establish any functional restrictions and Claimant does not explain what additional limitations ALJ Wilkerson should have imposed based on this evidence. (*Id.* at PageID # 917, 921). Finally, because Claimant failed to show any inadequacies in the medical evidence on the record and ALJ Wilkerson reasonably determined that this evidence

6

was sufficient to determine whether Claimant was disabled, a consultative examination was not required. (*Id.* at PageID # 914-15).

### 1. Whether ALJ Wilkerson Had a Heightened Duty to Develop the Record

While an ALJ must ensure that every claimant receives a "full and fair hearing," the ultimate burden of proving entitlement to benefits lies with the claimant. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). Although social security proceedings are inquisitorial rather than adversarial, that does not mean that the ALJ advocates for the claimant. *Id.* ("Promoting the claimant's case, of course, is not the ALJ's obligation. The ALJ, remember, is a neutral factfinder, not an advocate.").

It is only under "extreme circumstances" that the ALJ could be said to have a "special duty" to help develop the record. *Id.* at 563-64 (discussing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Claimant, however, disregarding *Moats* and its relegation of *Lashley* to "extreme" situations, cites *Lashley* and argues that ALJ Wilkerson erred by not developing the record. (DN 15-1, at PageID # 901). To the extent that Claimant argues that ALJ Wilkerson erred under *Lashley*, her argument fails. In *Lashley*, the claimant was not represented by counsel and only had a fifth-grade education. 708 F.2d at 1050-52. A series of strokes left Lashley unable to articulate his thoughts and impaired his ability to read. *Id.* Here, in contrast, Claimant was represented by a non-attorney representative, attended two years of college, and could articulate her thoughts while testifying. (Tr. 33, 37-47, 187). Thus, Claimant has not shown that her case was an "extreme" situation in which ALJ Wilkerson had a heightened duty to develop the record.

### 2. Whether ALJ Wilkerson Was Required to Obtain a Medical Opinion

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases his RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3).

An ALJ is not required to base an RFC on a medical opinion. *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (affirming that "neither the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC" and, moreover, "none of the[] cases [cited by the claimant] even remotely suggests that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered"). Further, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw*, 803 F.2d at 214 (citing 20 C.F.R. § 416.917(a)). While the ALJ has a duty to conduct a "full inquiry," that duty "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)); *see also* 20 C.F.R. § 416.919a(b)(1) (an ALJ may be required to obtain a consultative examination when "[t]he additional evidence needed is not contained in the records of [the claimant's] medical sources").

Claimant points to the so-called "*Deskin* rule" in support of her argument that ALJ Wilkerson should have obtained a medical opinion. (DN 15-1, at PageID # 901 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). In the years following *Deskin*, district courts within the Sixth Circuit have narrowed this rule to apply only "(1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC error based on an outdated source opinion that did not include consideration of a critical body of objective evidence." *Nalley v. Kijakazi*, No. 3:20-CV-00472-RSE, 2021 U.S. Dist. LEXIS 226669, at *9-10 (W.D. Ky. Nov. 23, 2021) (quoting *Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 U.S. Dist. LEXIS 19130, at *30 (E.D. Ky. Feb. 6, 2019)). Notably, however, *Deskin* is not controlling and has received mixed reviews in its own district. *See, e.g.*, *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 U.S. Dist. LEXIS 18644, at *4 (N.D. Ohio Mar. 1, 2010) ("The Court finds, however, that *Deskin* . . . is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals."); *Berrier v. Comm'r of Soc. Sec.*, No. 3:20-CV-01655-JZ, 2021 U.S. Dist. LEXIS 251442, at *20 (N.D. Ohio Sep. 10, 2021) (citing cases that followed *Deskin* and those that did not), *report and recommendation adopted*, No. 3:20 CV 1655, 2022 U.S. Dist. LEXIS 11780 (N.D. Ohio Jan. 21, 2022).

Moreover, the Sixth Circuit has since held that an ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records "if there is some indication that the ALJ at least considered these facts before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)); *see also Van Pelt v. Comm'r of Soc. Sec.*, No. 1:19 CV 2844, 2020 U.S. Dist. LEXIS 244781, at *37 (N.D. Ohio Dec. 30, 2020) (finding that so long as an ALJ's

9

ultimate decision is supported by substantial evidence, an ALJ may rely (in part) on outdated state agency opinions without obtaining updated opinion evidence).

This Court addressed a case with a similar fact pattern in *Nalley v. Kijakazi*, which the Commissioner cites in his brief. 2021 U.S. Dist. LEXIS 226669. There, the claimant argued that the ALJ interpreted raw medical data and should have obtained a more recent medical opinion to account for evidence (including an MRI) which postdated state agency opinions. *Id.* at *7. The ALJ had found these opinions persuasive but proceeded to add limitations to the claimant's RFC in light of the MRI results and other subsequent evidence. *Id.* at *11. This Court found that the ALJ was not required to obtain another medical opinion because she considered both the state agency opinions and the evidence postdating them in formulating a more restrictive RFC. *Id.* at *12. The Court also held that the ALJ did not interpret raw medical data in considering the MRI results because she "simply stated the findings outlined in Nalley's 2019 MRI Imaging Services Report and noted that '[t]here was still no evidence for significant disc herniation and/or nerve root compromise at any level[.]'" *Id.* at *15.

Other cases in this District have reached similar conclusions. *See, e.g.*, *Houchens v. Kijakazi*, No. 1:20-CV-00173-HBB, 2022 U.S. Dist. LEXIS 30582, at *21 (W.D. Ky. Feb. 18, 2022) ("From [the MRIs and other raw medical data], the ALJ could reasonably find that a limitation on light exertion is consistent with the evidence as a whole and make reasonable adjustments to the postural and environmental restrictions based on the subsequently received medical evidence."); *Shawn P. v. Kijakazi*, No. 3:20-CV-00441-CHB-RSE, 2022 U.S. Dist. LEXIS 147744, at *16-17 (W.D. Ky. July 13, 2022) ("Plaintiff seems to take issue with the consultants' findings mainly because additional evidence was introduced into the record after their opinions were issued. But as the Commissioner notes, ALJ Alexander clearly considered the later-

10

submitted evidence and incorporated additional limitations 'to ensure adequate weight [was] given to [Plaintiff's] subjective allegations.'").

Here, as in *Nalley*, neither of the *Deskin* circumstances apply. ALJ Wilkerson relied on the two state agency consultants' opinions in the record, the last of which was rendered on September 8, 2021. He then proceeded to add further restrictions to the exertional and postural limitations recommended by the consultants. ALJ Wilkerson limited Claimant to light work with "*no* climbing of ladders, ropes, or scaffolding, but *occasional* climbing of ramps and stairs, stooping, kneeling, crouching, and crawling." (Tr. 21 (emphasis added)). He further determined that Claimant could "stand and/or walk for *four* hours in an eight-hour workday, *for up to thirty minutes at a time*." (*Id.* (emphasis added)). ALJ Wilkerson also added environmental limitations that were not included in the state agency opinions. (*Id.*).

Moreover, ALJ Wilkerson considered the evidence that postdated the state agency opinions. ALJ Wilkerson cited to Claimant's CT scan results, noting that it "showed a right subarticular disc extrusion at L4-L5 narrow the right lateral recess where there may have been a previous left laminotomy at this level, and a far posterolateral disc bulges or extrusions but exited nerve roots on the left at L2-L3 and on the right at L3-L4." (Tr. 23). He also noted Claimant's hearing testimony in which she complained of increasing back and leg pain. (Tr. 22). Although the state agency opinions were not based on the full record, ALJ Wilkerson was not required to obtain additional opinion evidence because he considered Claimant's CT scan and subjective complaints and incorporated additional limitations to ensure adequate weight was given to this evidence.

There is no evidence that ALJ Wilkerson interpreted "raw medical data." While Claimant's CT scan included medical data, ALJ Wilkerson did not consider it in a vacuum. Based on the consultants' opinions, ALJ Wilkerson reasonably found that a limitation to light exertion was

11

consistent with the evidence as a whole and adjusted the restrictions based on the subsequent evidence. Moreover, the CT scan had already been read and interpreted by a radiologist. (Tr. 849). Like the ALJ in *Nalley*, ALJ Wilkerson simply reiterated the radiologist's interpretation of the scan and noted that it "would support potential worsening of the claimant's condition." (Tr. 24). The Sixth Circuit has ruled that similar consideration of a claimant's x-rays was proper. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) (affirming that the ALJ had not improperly interpreted raw medical data where the claimant's x-rays had been interpreted by a radiologist and the ALJ's conclusions were consistent with the technician's interpretation). In so finding, ALJ Wilkerson did not erroneously "play doctor" or inappropriately analyze Claimant's CT scan results.

In support of her position, Claimant cites *Phelps v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-02295-BYP, 2022 U.S. Dist. LEXIS 236032 (N.D. Ohio Nov. 15, 2022), *report and recommendation adopted*, No. 1:21-CV-2295, 2023 U.S. Dist. LEXIS 8867 (N.D. Ohio Jan. 18, 2023). (DN 15-1, at PageID # 900). In *Phelps*, the court found that the ALJ "claim[ed]" that the record contained no evidence of Phelp's objective exam findings, "[b]ut the record plainly contain[ed] such clinical findings and other relevant clinical findings the ALJ did not acknowledge." 2022 U.S. Dist. LEXIS 236032, at *27-28. The ALJ based his decision on the fact that Phelps had no MRI testing that "one would expect if the claimant had symptoms that were of a disabling nature[,]" but the court pointed out that there was MRI testing in the record that the ALJ ignored. *Id.* at 28. Here, ALJ Wilkerson did not ignore Claimant's CT scan. Rather, ALJ Wilkerson considered the scan and made Claimant's RFC more restrictive in light of its results. Thus, *Phelps* does not apply.

Confusingly, Claimant also relies on *Charles W. v. Commissioner of Social Security*, but, as the Commissioner points out in his brief, *Charles W.* reached the opposite conclusion. No. 3:22-CV-00312-DJH-CHL, 2023 U.S. Dist. LEXIS 136861 (W.D. Ky. July 5, 2023); (DN 15-1, at PageID # 901). There, the Court rejected the claimant's argument that the ALJ's RFC findings were invalid because they were not based on any medical opinion. *Charles W.*, 2023 U.S. Dist. LEXIS 136861 at *28. The Court found the claimant's reliance on *Deskin* misplaced because "[t]he record contain[ed] a number of medical opinions, none of which Claimant alleged were outdated and some of which the ALJ found persuasive." *Id.* at *30. As *Charles W.* supports the Commissioner's position, Claimant's reliance on the case is unpersuasive.

Even if ALJ Wilkerson erred in analyzing the state agency findings, the error—which benefitted Claimant—would be harmless at best. *See Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 U.S. Dist. LEXIS 107921, at *20-21 (N.D. Ohio June 16, 2022) ("The Court will not fault the ALJ for finding more restrictions than the state agency reviewers opined[.]"); *Kopcial v. Comm'r of Soc. Sec. Admin.*, No. 1:23-cv-0201, 2023 U.S. Dist. LEXIS 228939, at *31 (N.D. Ohio Oct. 20, 2023). Claimant is in no position to assert, as error, something that benefitted her.

For all these reasons, the Court finds that ALJ Wilkerson did not have a heightened duty to develop the record and was not required to seek additional opinion evidence or order a consultative examination for Claimant.

    B.  Whether ALJ Wilkerson's RFC Determination is Supported by Substantial Evidence

        1.  ALJ Wilkerson's Assessment of Claimant's Subjective Allegations

Claimant asserts that ALJ Wilkerson failed to provide a "sufficiently specific" explanation as to why her allegations at the hearing were rejected or identify any inconsistencies between

13

Claimant's allegations and the record evidence. (DN 15-1, at PageID # 903-04; DN 22, at PageID # 932). Specifically, Claimant alleges that ALJ Wilkerson did not adequately address her subjective complaints at the hearing regarding the recent worsening of her back and leg pain and her estimations as to how long she could sit, stand, and walk. (DN 15-1, at PageID # 903-04). Claimant argues that ALJ Wilkerson's error was prejudicial because, if he had properly considered her testimony, "the vocational testimony would not have yielded jobs, and the result at the final step of the sequential evaluation process would have been different." (DN 22, at PageID 933). In response, the Commissioner argues that ALJ Wilkerson reasonably concluded that Claimant's subjective allegations were not fully believable when contrasted with Claimant's lack of significant treatment since the surgery, lack of documentation supporting her need for an assistive device, and her daily activities. (DN 17, at PageID # 922).

In assessing an individual's RFC, the ALJ must consider the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p (2016). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. *Id.* §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in *Duncan v. Secretary of Health & Human Services* applies. 801 F.2d 847, 853 (6th Cir. 1986). First, the ALJ must examine whether there is objective medical evidence of an underlying medical condition. *Id.* If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the

alleged disabling pain." *Id.* When the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Other factors include a claimant's level of daily activity, the frequency that treatment is sought for the allegedly disabling condition, inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence, and the medication used to alleviate the alleged pain or other symptoms. *Id.* §§ 404.1529(c)(3)(i), 404.1529(c)(3)(iv)-(v), 404.1529(c)(4), 416.929(c)(3)(i), 416.929(c)(3)(iv)-(v), 416.929(c)(4).

Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain largely depends on the credibility of the claimant, the conclusion of the ALJ, who has the opportunity to observe Claimant's demeanor, "should not be discharged lightly." *Fulton v. Kijakazi*, No. 4:20-CV-00189-HBB, 2022 U.S. Dist. LEXIS 82371, at *12 (W.D. Ky. May 6, 2022) (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)). In the present case, ALJ Wilkerson found from the medical record and Claimant's testimony that Claimant did not suffer pain to the extent she testified.

After summarizing Claimant's testimony from her hearing regarding her physical impairments, ALJ Wilkerson found that Claimant's medically determinable impairments "could reasonably be expected to cause the alleged symptoms[.]" (Tr. 23). However, he noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*).

ALJ Wilkerson then proceeded to discuss the record evidence for Claimant's physical impairments. He noted that Claimant "has a history of degenerative disc disease of the lumbar

15

spine" and, as a result of this impairment, limited Claimant to light work with enumerated restrictions. (*Id.*). But ALJ Wilkerson "did not find the claimant's allegations with regards to alleged frequency and severity of symptoms to by [sic] fully supported by the medical evidence of record." (Tr. 24). ALJ Wilkerson also addressed credibility factors throughout his decision, including the level of treatment Claimant received for her degenerative disc disease. For instance, ALJ Wilkerson noted that:

> In June 2021 at a neurosurgery follow-up appointment, the claimant reported her symptoms had improved since surgery. The claimant denied numbness and tingling in her legs but reported some residual intermittent leg pain. The claimant reported taking Tylenol as needed for her pain symptoms. The claimant was noted to have normal gait at that time with intact strength in the upper and lower extremities[.]

(Tr. 23 (citing Ex. 3F)). ALJ Wilkerson also considered the frequency of Claimant's treatment and her daily activities, noting that "[t]reatment records do not document significant medical follow-up after the claimant's May 2021 lumbar surgery . . . or the need for an assistive device for ambulation[,]" and, in December 2021, "the claimant reported staying up late and cleaning for three to four hours[.]" (Tr. 24 (citing Exs. 3F, 4F, 6F). This objective evidence is also inconsistent with Claimant's statements about her worsening back and leg pain.

Because ALJ Wilkerson discussed the subjective and objective medical evidence at length, weighed Claimant's testimony against the record evidence, and considered Claimant's subjective complaints using the regulatory factors, the Court finds that ALJ Wilkerson's evaluation of Claimant's subjective complaints is supported by substantial evidence and complies with applicable regulations.

    2. ALJ Wilkerson's Assessment of Objective Medical Evidence

Claimant's final challenge alleges that substantial evidence does not support ALJ Wilkerson's RFC determination. (DN 15-1, at PageID # 902). Her brief raises a couple examples

of post-surgery evidence that she argues ALJ Wilkerson either failed to consider or improperly considered in his analysis. Because these arguments only seek to have the Court reweigh the evidence considered by ALJ Wilkerson, neither is persuasive. *See Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.") (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

Claimant argues that ALJ Wilkerson "offered no reasons for why [the CT scan] did not confirm [Claimant's] testimony that she continues to have problems with her back and pain radiating into her left leg." (DN 15-1, at PageID # 903). However, as discussed above, ALJ Wilkerson noted the scan's results and, in turn, implemented greater restrictions in the RFC. (Tr. 23-24). ALJ Wilkerson also highlighted objective evidence contradicting Claimant's claims of increasing back and leg pain. (Tr. 24). In addition, it is unclear from Claimant's brief what other limitations, if any, she believes ALJ Wilkerson should have added to the RFC based on the results of her CT scan.

Claimant also argues that ALJ Wilkerson "[did] not explain why he discounted [Claimant's] testimony that the MRI was scheduled because she was starting to drag her foot again." (DN 15-1, at PageID # 903-04). But "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)); *see also Coppage v. Berryhill*, No. 1:16-CV-00144-GNS, 2017 U.S. Dist. LEXIS 214523, at *11 (W.D. Ky. Aug. 10, 2017) ("The ALJ's decision does not discuss every single piece of medical evidence, but she is not required to do so."). That said,

although Claimant submitted the March 9, 2022 CT scan to ALJ Wilkerson for consideration, she never submitted any results from the MRI scan allegedly taken the same day. This fact further undermines Claimant's argument that ALJ Wilkerson's decision is not supported by substantial evidence.

Claimant cites to *Heidi E. v. Commissioner of Social Security* as persuasive authority, where the Southern District of Ohio determined that the RFC was not supported by substantial evidence when the ALJ disregarded the claimant's increasing reports of pain due to a lengthy period of relief following her surgery. No. 3:22-cv-282, 2023 U.S. Dist. LEXIS 128252, at *15-16 (S.D. Ohio July 24, 2023). But the circumstances here are distinguishable because the records in *Heidi E.* showed more "significant evidence of [the claimant's] deterioration" through imaging, her consistent reports of high pain levels without appreciable relief, and, ultimately, another surgery. *Id.* at *15. In Claimant's case, on the other hand, her CT scan could support *potential* worsening of her condition, her subjective complaints of increasing pain were inconsistent with the objective evidence, and she did not undergo additional surgery. (Tr. 24). Moreover, rather than dismissing Claimant's subjective allegations and the CT scan's results, as the ALJ did in *Heidi E.*, ALJ Wilkerson considered this evidence and incorporated more limitations into his RFC determination. (*Id.*). Thus, the Court is able to discern a "logical bridge" between the evidence in the record and ALJ Wilkerson's conclusion.

As ALJ Wilkerson's RFC determination is supported by substantial evidence in the record and comports with applicable law, Claimant's final argument must fail.

## IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS**

**THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:       Counsel